Case number 24-1592. Judy Yeltsin Pietersen and Daniel Gohard-Brown, Appellants v. United States Department of State et al. Ms. Newhampy for the Appellants, Ms. Westerberg for the Appellees. Good morning, Your Honors. Good morning, Mr. Hampy. Carl Hampy with the Fragment Law Firm for Appellants Judith Pietersen and Dan Brown. May it please the Court, Your This Court can hear Ms. Pietersen's challenge to the erroneous instruction in the Foreign Affairs Manual, the FAM. There's no authority to support the government's overly broad claim that it can draft an unlawful guidance insulated from judicial reviews simply because it'll end up in the hands of a consular officer and contrary authority supporting review from this circuit. The State Department's FAM instruction on the willful misrepresentation ground is clearly unlawful as the District Court incorrectly applied an interim ground of consular review and it's reasonably standard to the ultimate determination of admissibility which requires willfulness. And finally Appellants ask that this Court direct the State Department to correct its mistaken FAM instruction so that Ms. Pietersen can have a fair shot at a Do you challenge this FAM policy? Because I read your complaint to just challenge the actual visa denial for Ms. Pietersen. The complaint in a number of instances states that specifically in paragraphs 13, 15, 57 and 52, Your Honor. Okay, can we slow down? You said 15? Yes. I'm sorry, not 13th. Second, we have it here. If I may, Your Honor, let me just... So the reason I'm confused is because your prayer for relief says that you request the court hold that defendants inaccurate description of the willful misrepresentation ground of admissibility to be in bad faith, not bona fide or face legitimate and that it vacate Ms. Pietersen's recent visa refusals and direct the State Department to refrain from applying an improper standard of evidence. Yes, Your Honor. In the third paragraph in the prayer for relief, we ask that the court find and declare the defendants inaccurate description of the willful misrepresentation ground in admissibility in its foreign affairs manual to be in bad faith and unlawful and that was the relief. But there's no sort of APA or like cause of action. It just seems that this complaint is really geared towards this specific visa application. When this complaint was filed, there's some procedural history that's important here, Your Honor. When this complaint was filed, the Munoz case hadn't even been accepted for cert by the Supreme Court, so a due process claim was still viable. As the subsequent oral argument in the district court showed, it no longer is. In the district court, we clarified that we still had a mandamus claim to direct the Secretary of State to perform the duty he owed to Ms. Pietersen and to Mr. Brown to properly... But that's geared towards the actual application as opposed to the general policy, isn't it? It was, we made it very clear in post oral argument briefs before the district court that the mandamus claim also applied to was our basis for challenging the Secretary's failure to properly implement the statute by drafting an unlawful FAM guide. But your appeal is not of the mandamus issue. Our appeal is of the FAMs... Our appeal does not challenge a consular officer's decision. Our appeal asks this court to exercise its authority that it did in the Bricklayer's decision by looking at the FAM instruction. I understand. I guess what I'm trying to understand is where you preserve that argument for appeal because your complaint does not appear to challenge the FAM in that respect. And you just told me about the mandamus litigation, but you're not challenging the mandamus decision. So I'm trying to understand how it is that this is properly before us as a challenge to the FAM as a policy. Your Honor, the immigration laws, section 1104a, charge the Secretary of State with properly administering the immigration laws. That creates the duty that the mandamus act we submit may be used by this court to encourage or to direct the executive to properly implement the immigration laws through its, based on its responsibility in 1104a. I see, but you're again going back to the mandamus. Is that what's before us right now? You're asking us to issue a writ of mandamus? Yes, Your Honor. We, here was our, Your Honor, our conundrum was the following, which was when, after the Munoz decision was made and after the district court ruled, we normally would have just gone back to district court and amended to clarify everything to, to have more clearly pled the APA, not merely as a jurisdictional basis, but also as a basis for relief and shown how the mandamus claim would also apply. Unfortunately, the district court decision clearly set forth how futile that would have been by saying, look, the doctrine precludes me from even considering this case and here's the way I read section 1201g of the immigration laws to eliminate your argument, to sustain the FAM's reason to believe statute, reason to believe standard. We normally would have gone back if it hadn't been futile to go back and amend, we would have, but, but the district court made clear that we couldn't. And so the relief we're asking for here in the alternative, if this court isn't comfortable with just directly striking the FAM instruction that we submit is unlawful and that we submit, um, this court through mandamus has the power to direct the secretary to strike the offending language, would be to allow us to... Is there a mandamus argument in your briefs? Yes. Yes, Your Honor. Um, and it was, and it was fully put before the district court. The district court didn't decide it. Um, these were in the post, um, in the post oral argument briefing, we, we, we said, um, that's on page two and page six of our post oral argument briefs before the district court, we said we believe the FAM, that the district court had authority and... I'm talking about your brief before us. Okay, yeah. Yes, I believe it's in our reply brief, Your Honor. So you can't raise a new argument in your reply brief, can you? Um, we, we, we submit, Your Honor, it was, it was not a new argument because mandamus was a part of our claim below. Mandamus was a part of our argument in the, um, the post argument, the post oral argument hearings before the district court. I think on page 19 of the blue brief mentions mandamus. In the, um, beginning of that first paragraph, starting on page 19, the court has permitted mandamus actions, challenging delays. Yes, thank you, Your Honor. Page 19. Second courts have clarified that future decision-making by a consulate does not trigger the doctrine and this court has permitted mandamus actions, challenging delays in the process of issuing a consular decision on the grounds that consular non-reviewability does not attach, attach until after a final decision has been made. I'm a little confused. Maybe it's the same issue. Maybe it's just a related issue. It struck me that this is really an APA challenge to the foreign affairs manual. I'm not sure why. I mean, mandamus would be if you were challenging a specific piece of denial. But if you're looking for a declaration or, you know, relief that the foreign affairs manual in this respect is contrary to the statute, would that be a satisfactory approach? Yes, Your Honor. Certainly, if we had been able to go back, if the district court decision hadn't clearly cut us off from going back to amend, in light of the Munoz decision, we would have gone back, amended, and filed an APA cause of action with the district court. But the district court said, don't bother because the doctrine cuts you off, and don't bother because 1201G has the reason to believe standard, which we submit is clearly around. So, you, I think you didn't get a chance to finish your sentence. You said, we should either invalidate the district court's reading of consular non-reviewability, or alternatively, and I thought you were going to say remand. Yes. In the alternative, this court could strike the district court holding that the 1201G reason to believe standard applies to the actual inadmissibility determination, and clarify that the doctrine doesn't preclude review of the FAM itself, and then remand with an opportunity for us to amend to, as you point out. So, on the merits of the challenge that the foreign affairs manual conflicts with the statute, I'm not sure I'd follow the argument, because the statutory provision doesn't say anything about the quantum of evidence of misrepresentation that a consular officer needs to deem an applicant inadmissible under subsection 1182A61. It just doesn't, there's nothing in that that contradicts the manual's use of reason to believe, and then, as the government argues, under section 1201G, which categorically says that consular officers should not recognize an applicant as eligible if the officer knows or has reason to believe that they're not eligible. I'm just not seeing, I understand the expressio unias, you know, that some of the other subsections explicitly use reason to believe, but you never point to anything in the act that provides an alternative standard, a higher standard, and it's really unclear from your briefing what standard you even think does apply and where you find it in the statute. The standard is willfulness, Your Honor, meaning elsewhere in 1182A where the other grounds of inadmissibility are set forth, when Congress wanted a reason to believe standard to apply, it said so, for potential money laundering, for drug trafficking, for material support of terrorism. Otherwise, it is the words of the statute, and it said you are inadmissible if by fraud or willful misrepresentation, you assert a fact or you omit a fact that's material to your visa application. But doesn't that mix, that's sort of apples and oranges. The question is reason to believe there's willfulness or a finding by the preponderance of the evidence that there's willfulness. I thought you were gesturing toward a different quantum of evidence. You're right that the merit standard that the consular officer should be thinking about is fraud or willful misrepresentation, but I thought you were challenging the standard of allegation or proof. Yes, Your Honor, we're challenging two things. We're challenging the quantum because reason to believe is certainly below preponderance, which is the default standard in the immigration laws. But we also challenge the second part of the FAM instruction, which says if an individual engages in conduct inconsistent with their nonimmigrant status within 90 days of visa application or admission to the U.S., you may presume that the applicant made a willful misrepresentation, i.e., you may presume that the applicant's representations about engaging in only status-compliant activity were willful misrepresentations. And it is those two parts of the FAM instruction taken together, the reason to believe, and then the presumption of willfulness simply by a fact pattern, those two taken together. Presumption of willfulness is where? I'm sorry, you gave a citation, but I missed it. It's in that same FAM instruction on the willful misrepresentation ground of inadmissibility. It's a little further down, 9 FAM 302.9. I think I have it here, the whole thing here. But we clearly in our papers challenged and in our briefing challenged both the reason to believe and the presumption. And the presumption just doesn't work with a willfulness standard. And particularly as we've pledged it, Your Honor, we showed how Ms. Peterson fit precisely into the fact pattern for the presumption. So we submit, Your Honors, that this was the cause, and we certainly satisfied the causation requirements. Can you just, I think it's JA 171 onward, the language that you're referring to, but you may presume that you're challenging. Is this argument in your briefs? Yes, Your Honor. The cause that you will presume. Yes. My apologies. Thank you. Your Honors, we begin our discussion of this on page 12 of our opening brief, where we. Here, on page 12, we discussed the FAM provision here, 9 FAM 302.9-4B3G1b. I know, but you're specifically arguing now that there's a provision about you will presume and that that's not appropriate. Yes. I've never seen any argument about that. So I think we, I submit we did, Your Honor, but let me find that provision. But I'm seeing, oh, here we go, at the bottom.  On page 206, page JA 206, basically the last paragraph on page 206, if an individual engages in conduct inconsistent with their nonimmigrant status within 90 days of visa application or admission.  You may presume.  Made a willful misrepresentation. No, I understand. I don't think it's in the brief. Yeah. I don't think you can argue that. I believe it is, but I'm sorry, I'm fumbling with papers and didn't have the precise. Yeah, I don't think it refers to this particular presumption, but the point, the point is, we understand the argument you're making now. So, I, you were in the process of responding to my question, how there's a conflict between the terms of the INA and the use in the manual of the reason to believe standard and you said there's a, that the default standard in the INA is preponderance. I don't see you citing anything for that, and I actually, I may not have read carefully enough, or I may be forgetting, but I didn't see that standard. Your Honor, that I can say for certain. We didn't include that argument in our briefs because our view of this was that the reason to believe standard and the presumption combined to clearly make inoperative the willfulness standard. Well, presumption could be rebuttable. What is the evidence that Ms. Peterson was not willful in violation of the visa terms? Yes, Your Honor, and if I may just give a brief summary of what happened here. Ms. Peterson came in five years ago, presented herself for entry at the Minnesota airport under the visa waiver program. As a visitor, visa waiver as a visitor, CBP turned her around, did not find her inadmissible, but said, we're not convinced because you've been here a lot that you're eligible for the visa waiver visitor status. Go back and get a visa. So Ms. Peterson went back to the consulate in Amsterdam. She applied for a visitor's visa. It was refused. She and her appellant, Dan Brown, had been engaged, so she filed a fiancé visa, and at that point, the consular officer in Amsterdam first lodged an inadmissibility determination for misrepresentation. 1201G is an interim basis for a consular officer to make a decision, and that officer could have used that statute to say, hmm, you may fit a fact pattern here. I should cast the net broadly using the reason to believe standard and determine whether or not a ground of inadmissibility applies because that bar would be for life. The consular officer did not do that, but that's the function of 1201G, and that's why Congress had the reason to believe standard to catch the wide net, cast the wide net. It's an interim basis for a decision as the district court said. How do you know what kind of net they cast? I'm sorry? How do you know what kind of net they cast? Well, they cast... Do you mean they didn't research this? The consular officer in that instance cast no net whatsoever. I was just explaining what... How do you know that? It was alleged in our complaint. She went. It was a quick interview. A 1201G determination is usually followed up by, you are hereby in administrative processing. The State Department has a form. They check the administrative processing box, and under 1201G... I'm just trying to get at... She worked. Yes, yes. She got money. So they have that information. That is what the CBP officer used to say, what's going on here? She said, well, yes, I did. I did that. I did do this. Because it seems like they had a factual basis, and how do you know they didn't cast a wide net? Because she was never given an administrative processing determination. I was saying that Congress, in creating the reason-to-believe standard in 1201G, allows a consular officer, in theory, casting a wider net to put somebody in administrative processing to determine whether or not a ground event admissibility applies. But when the determination is made, it's not made under a reason-to-believe standard, and we submit that the statute doesn't allow presumptions to apply, that the consular officer has to say, well, you willfully misrepresented to that CBP officer that you were coming purely for visitor's purposes when she said, she never denied that she came for, in part, dressage lessons. She said, yeah, I didn't know that was unlawful. She made no misrepresentation whatsoever. So you're helpfully describing two different types of determination, a kind of provisional interim determination that is based on reason-to-believe, and that triggers, as you say, a process where she could have an opportunity to make her case. It could, which didn't happen here. Right, and that that would involve more opportunity to sort of clarify and get a determination. And so what you're saying is that they collapsed that interim decision and made it sort of final and lifelong? Did you say permanent? Yes. So there is no requirement that the consular officer issue an interim determination, but that explains why 1201G has a reason-to-believe standard. In this instance, the consular officer in Amsterdam looked at whatever the officer looked at and said, look, you're inadmissible, so went to the final determination. A 212A6C, 1182A6C determination is permanent, right? Unless Ms. Peterson can go back, and this is our request, that she be able to go back and apply for a new visa and convince a consular officer that she's not inadmissible, she is inadmissible permanent. Waivers are available, but they're under stricter standards of hardship, and they're completely discretionary. I guess if you're saying that the Foreign Affairs Manual categorically misapprehends this scheme that you're describing where there's an interim determination and then a full-on permanent determination, or that the CBP official misapplied it by treating what should be an interim determination as a final. There was only one mistake. The only one agency made a mistake here, Your Honor. CBP made no mistakes. It never found Ms. Peterson inadmissible. It simply said, we're not sure you qualify to enter as a visitor. Go back and get a visa. She did go back. When she applied for the visa, for the fiancé visa, the consular officer applied a ground of inadmissibility that required a willful, and by statute, that she have willfully misrepresented to the CBP officer then or during other admissions that she was coming for a purpose other than her primary purpose and that she had done so willfully, knowingly, with intent to deceive. She did nothing of the sort. She said, I thought I always could. And the Foreign Affairs Manual, which is what we seek a remedy for, which is what we seek to challenge. Where's the willfulness standard? By fraud or willfully misrepresents a material fact is inadmissible in 1182A6C. And fraud, of course, it's deceit. It requires the intent, willful misrepresentation of a material fact. The statute there is pretty clear. It's a permanent and onerous ground of inadmissibility. It shouldn't be entered into simply by a FAM instruction that says, well, go ahead and presume this, because if someone does something inconsistent with the terms of their visa category, you may presume that they made a willful misrepresentation. That's what the FAM instruction says. We submit that's clearly unlawful. We submit this court has jurisdiction, notwithstanding the doctrine of consular nonreviewability, to look at that FAM statute and instruct the State Department to correct it so that in the future, when Ms. Peterson applies again, because she will, because she's going to be married to a U.S. citizen, she at least has a level playing field upon which to establish her eligibility. How are you going to get a review of that in light of consular nonreviewability? I'm sorry, Your Honor? How are you going to get a review of that in light of consular nonreviewability the next time that happens? Your Honor, we will take it. If this court would strike the offending FAM instructions, we will take our chances. We submit this court can review the FAM instruction, notwithstanding the doctrine. We understand that we can't seek review of the prior refusals, and we can't seek review of a future refusal. Of a future refusal. Of a future refusal if it's, well, of a future refusal. Refusal, period. Yes, period. I'm not sure what the point of all this is. You're going to lose no matter what. Your Honor, we submit we won't lose if the offending FAM instruction isn't there, because then there will be no presumption that when she enters. How will you know that in light of the doctrine? Your client is simply declined. It's not reviewable by us. A future refusal would not be reviewable if we get a future refusal, Your Honor. We submit that her injury here was the offending FAM instruction, which caused the prior refusals, and we submit the Secretary of State has a duty to administer the immigration laws consistently with the statute, including by having FAM instructions consistent with the laws. We'll take our chances going forward, but that would be meaningful relief. We submit, and that's how we've pledged it. Okay. Thank you. Good morning, Your Honors. You may place the court at Kara Alsterberg on behalf of the United States. Ms. Peterson has been found inadmissible by two different consular officials, and she cannot enter the United States. Can you just sketch for us the distinction between eligibility and inadmissibility? Here she's been found inadmissible underneath 1182A6C1, which is that, and as discussed with counsel across the aisle, was that she willfully made a material misrepresentation, and that was when she was on a tourist visa. She entered the country claiming to be within the country for tourist reasons, when, in fact, she subsequently received payment for work. This was found in the Facebook group relating to the dressage, and even Ms. Peterson herself admitted in a declaration as part of the amended complaint that states that she did receive nominal compensation for work performed. Okay. She admitted that she did it, but willfulness requires at the time of entry on the visa that you have an intent to do something that's prohibited by the visa, and there's no showing of that that I understand. We're already looking behind the veil of consular nonreviewability.  I'm trying to understand how the process works. I fully appreciate the consular nonreviewability, but in terms of the going forward issue, I'm just trying to understand the government's view of the basis of the nonreviewable determination of willfulness. So here, all that is required is that a consular official found her inadmissible pursuant to 1182A6C1. And that is a permanent bar? That is a bar that can be waived through an I-601 waiver, which is a form that allows noncitizens to immigrate to the U.S. when they're otherwise inadmissible. They must demonstrate their inadmissibility would cause difficulties for their family members. And I asked you what the difference is between eligibility and inadmissibility, and I gather eligibility is more episodic visa-specific, and ineligibility is a kind of categorical.  So here, under a typical consular nonreviewability, a typical case where a consular official looks at someone, a noncitizen, trying to enter the United States on a visa, what's required is they have the interview, and then afterward, pursuant to 1182B, all that's required is a written denial, or the determination, and then a citation regarding what the reason for that denial was. And here, that was met. That's all that's needed. And technically, even if there was some type of exception, some type of constitutional exception, that meets the standard even under a facially legitimate and bona fide standard for what is required. And here we have even more information than that. We know what the problem is. The problem is that she came here on an ESTA and received payment. So even if we can't reach this because of consular nonreviewability, it seems like the facts are she earned some money doing this dressage thing, which violated the terms of the visa. But what's the reason to believe that it was willful? All that's required is that the consular officer, we don't know necessarily what they looked at to make that determination. That's also an assumption that's being brought in by appellants, is that there was an assumption that there's a reliance on the spam guidance or upon information and belief. I understand we might not get to this because of consular nonreviewability, but if all the facts are is that she did something and then she's not admitted because there's reason to believe that it was willful, I don't see how there's reason to believe that it was willful if all you know is that she did it. You don't know what she was thinking when she did it. Well, to provide maybe a little more context, the FAM does actually have standards for what a finding of fraud looks like and what a finding of willful misrepresentation looks like. That's 9FAM302.9-4B2. And what JA page to help us out? That might be in our... Right, in your addendum? Yes. Oh, the FAM's not in that one. That might be actually in the read to add FAM sites at the end. Are you on 203, the INA misrepresentation? Or 207, inconsistent conduct? The interpretation. Of the term misrepresentation? Yes. Page 204 of the joint appendix? Okay. Apologies. I just want to make sure. For example, 204, I'm looking at 302.9-4B3. Subdivision B. Necessary to distinguish between misrepresentation of information, information that was merely concealed, silence or the failure to volunteer information does not in itself constitute a misrepresentation. So it's unclear what she said that was a misrepresentation. I guess the form of the government's argument is the form of the visa was a purely tourist visa, and that's a representation. I'm only going to be there as a tourist. Yes. And is it not material to the government that the person doesn't realize that the nominal compensation that she got was inconsistent with tourism? Yes. Circling back to the, so is it the government's position that this kind of misrepresentation determination is under the INA made under a reason to believe standard? I think the district court laid out the fact that 1201G is the operating statute related to 1182 and that it was not completely out of left field that a reason to believe standard would find its way into the FAM. I can't hear you.  That 1201G is the operating statutory guideline related to the determinations that a consular officer will make, and that's what the district court also cited to, to explain how when a consular knows or has a reason to believe that a person is ineligible to receive a visa under section 1182. I think it's a little bit bootstrapping because this says you don't issue if you think the person's ineligible, if you have reason to believe that they're ineligible. But what we're talking about here is a determination of ineligibility in the first place. So, and I'm wondering what the process is, according to the government, for making a determination. This person has engaged effectively in visa fraud or visa misrepresentation. They've come under false pretext. We're going to keep them out of the United States, presumptively permanently, you know, unless they get a waiver. And I, my question is in making that determination, is it correct that the government does that? The consular officer, let's say, makes that permanent ineligibility determination based on a so-called reason to believe level of information allegations. That's in the FAM itself. Perhaps we can presume that that's something that the consular officer looks at. Are you saying it's in the FAM at 1201G? Or it's in the FAM as to how to conclude there was a misrepresentation. So that's the 3029-4B3G1B. What do you mean here, reason to believe? Reason to believe what? That she engaged in fraud or that she entered the country alleging she was coming in as tourists, but she also did some work, which is not necessarily fraud. And that's why it's both fraud or willful misrepresentation. I'm trying to give you the alternative of fraud and willful misrepresentation. She came in primarily on tourism and she didn't assume anything untoward about doing a little money-making venture here or there. She didn't assume. So there's no way that anyone would, in a real case, say that that was evidence of fraud. Here, it's under the misrepresentation standard. While that subsumes both fraud and willful misrepresentation, it's someone who's sought to procure or has procured admission to the United States, such as entering on a tourist visa and then getting compensation for that. So the consular officer looks at a whole host of things, including the FAM, including the statutory text. Does that have to reach a level of fraud? That does not. It doesn't? It does have to reach a level of willful misrepresentation. Yes. Yes, and indeed, on JA-206, the provision you were looking at, G-1, if you look at B in boldface, the fact that an individual's subsequent actions are inconsistent with what was represented at the time of visa application, admission to the United States, or in filing for another type of visa, does not automatically mean that their intentions were misrepresented at the time of either the visa application or application for admission to the United States. And my question, which I don't think you've answered, but I think is really central to the government's position, is what is the level of the quantum of information that the consular officer needs to make a determination that someone is inadmissible based on a willful misrepresentation? Is it preponderance of the evidence? Is it reason to believe, or is it some other standard? It's unclear from the record what that standard would be or what exactly a consular officer looks at. What is the position of the government as a matter of law? Right. That's a contested issue in this appeal. Likely that such a, you know, the FAM guidance is not inherently incorrect and that it did appropriately apply. It doesn't give a standard of proof. And so I wonder what you think the standard is. At least I don't see it. You know it way better than I do, so you should point us to where it says reason to believe or preponderance of the evidence or... Okay. Make a finding sufficient to meet the reason to believe standard. This is in the FAM. Now what about in the statute? What's the best place to look? You see where I'm looking, right after the bolded it says to conclude there was a misrepresentation. And this is the part that I take it that Ms. Peterson is challenging. That here the FAM says there only has to be evidence sufficient to meet the reason to believe standard. And the question is, is that consistent with the statute? And then you pointed me, I think, to 1201G.  And that's what your brief pointed us to. That if it appears to the consular officer that an alien is ineligible, or the consular officer knows or has reason to believe that the alien is ineligible. And I guess the question is, this seems to refer to a determination, maybe just facts, showing ineligibility. So. But this, from the government's perspective, is also not a unique case about the standard of proof that was applied. This is just simply appellant's way to pierce through consular non-revealability because they disagree with the outcome of that decision. Well, let's say a party comes without a, with a non-revealability,    has an intention to come to the United States and brings an APA challenge to the Foreign Affairs Manual, arguing that it's inconsistent with the statute. Let's say that person says, of course, when you're determining someone ineligible for life, based on something that isn't, some of these drug trafficking or things that, where there's a reason to believe standard for the ineligibility. And they say, well, look, some of these standards say that reason to believe is the ineligibility, sort of the burden of proof. And this one doesn't. And you're, you say, well, no, it's reason to believe for all of them. And your site for that is 1201G. Or that it could capture that as well. That if we have to get to that question, which in this case is not broad. I understand you're not conceding that that is not this case. We're just trying to understand the nature of the claim and the nature of the government's position on it. All right. Did Mr. Hempe reserve time for rebuttal? We'll give you two. I think we use more. I'll talk fast. Thank you. Your honors, we mentioned the presumption language in the FAM on pages four and 11 of our opening brief. When we said on assumption, the FAM, the challenge FAM guidance allowed a finding of inadmissibility based on assumption. I concede we didn't quote the whole section, but we did refer to the FAM section that we were challenging in the  I would like to really underscore one point. The district court suggests that 1201G is the ultimate arbiter here because it is the source of the government's ability to find Ms. Peterson inadmissible. That is flat out wrong. The basis for Ms. Peterson inadmissible is 1182A6C. 1201G is an interim determination by a consular officer. A number of cases in the district court, such as Shoei v. Blinken, Vullapala v.  Nineraki allies. Did you cite those cases? I'm not sure we did, but. We won't find them. If you didn't cite them, we won't find them. If you don't give us. Yes. Speak more slowly. Shoei. S-H-O-A-I-E. V. Blinken. It's a Westlaw site. It's DDC November 6th, 2024. Number 124. CV 01513. There's also Vullapala. V-U-L-U-P-A-L-A-V-B-A-R. 438 F. Sup. 3rd. 93. A 2020 district court decision. There's a well-known one, Nine Iraqi allies from 2009. All of these cases collect other cases showing that a 1201G determination is not final and interim in nature. Did you make that argument? Yes. Yes, Your Honor. It all comes down to, what does 1182A6C say? It says willfulness. The FAM instruction that we challenged so corrupted or, you know, so negatively affected the consular determinations that Ms. Peterson has experienced to date, that she didn't get a fair hearing on whether she was inadmissible or not because she didn't misrepresent her purpose when she entered. She acknowledged she had worked. She said, I didn't know that was unlawful. She's in the dressage industry and there's a complex exception to what horse trainers can do on a B visa that influenced her answer. But putting that aside, there's no need to go that deep into the facts. Simply, she didn't misrepresent her purpose when she entered. CBP never said she misrepresented herself. When she went back, the consular officer in Amsterdam inferred, presumed that she had misrepresented because she fit a fact pattern that the unlawful FAM instruction placed before the consular officer. We submit that so thoroughly affected the adjudication and will, critically, will do so in the future, that she and Mr. Brown are suffering ongoing harm going forward because she won't be able to get over this permanent inadmissibility if she isn't able to have a fair hearing absent the offending language and the FAM instruction. And we've argued why bricklayers and a number of other cases here allow this court to look at the FAM instruction. We would be very satisfied if this court would want to remand for us to state that more clearly in an amended complaint, which we felt we didn't have the opportunity to do but isn't required now in light of the Supreme Court's ruling in Munoz. Thank you. Thank you, Your Honors.
judges: Pillard; Pan; Edwards